## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PAPYRUS TECHNOLOGY CORP.,  :
  :
    Plaintiff and Counterclaim-Defendant, :
  :
         v.  :      **Before: Judge Judith M. Barzilay**[*]
  :      **No. 04 CV 00625**
  :      **PUBLIC VERSION**
NEW YORK STOCK EXCHANGE, LLC,  :
  :
    Defendant and Counterclaim-Plaintiff. :
  :
  :

## MEMORANDUM OPINION

Dated: April 07, 2009

**BARZILAY, JUDGE:**

    This Memorandum Opinion further explains the basis for the court's March 16, 2009

Order Admitting the Declaration of Lee A. Hollaar (the "*Declaration*"), which Plaintiff Papyrus

Technology Corp. ("Papyrus") appended to its January 15, 2009 Motion for Summary Judgment

of Infringement.

### I. Background

    On January 15, 2009, Papyrus and Defendant New York Stock Exchange, LLC ("NYSE")

filed moving briefs for summary judgment, accompanying each with supporting documentation.

In support of its motion, Papyrus submitted the *Declaration* – written by its sole expert witness,

Dr. Lee A. Hollaar – purportedly as a supplemental report pursuant to Federal Rule of Civil

---

[*] The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

Procedure 26(e).[1]  Papyrus, however, not only failed to seek leave from the court to supplement

Hollaar's expert report – a logical step given the court's prior denial of Papyrus's request to serve

"updated expert reports on the liability issues that reflect the [c]ourt's claim-construction rulings"

– but also failed to provide any reason for doing so.  Joint Letter at 1, Oct. 2, 2008 ("*Joint*

*Letter*"); *see* Order, Oct. 28, 2008 (denying Papyrus's "request for supplemental discovery on the

liability and damages issues" and stating that Papyrus "may avail itself of the provisions of Fed.

R. Civ. P. 56(f) at an appropriate point in the proceedings").  On January 28, 2009, NYSE

contested the admissibility of the *Declaration*, arguing that it should be stricken from the record

due to its "unauthorized and massive supplementation of expert discovery."  Def. Letter at 1, Jan.

28, 2009 (*Def. Jan. 28 Letter*").  Papyrus responded via letter on February 9, 2009, arguing in

favor of the *Declaration*'s admission.  Specifically, Papyrus suggested that (a) the court apply the

factors outlined by the Second Circuit in *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d

Cir. 1988) in deciding whether to exclude the expert testimony, and (b) the factors all favor

---

[1] Rule 26(e) states that

[a] party who has made a disclosure under Rule 26(a) – or who has responded to
an interrogatory, request for production, or request for admission – must
supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the
disclosure or response is incomplete or incorrect, and if the additional or
corrective information has not otherwise been made known to the other
parties during the discovery process or in writing; or
(B) as ordered by the court.

Fed. R. Civ. P. 26(e).

admission of the *Declaration*.[2]  Pl. Letter at 1-5, Feb. 9, 2009 ("*Pl. Feb. 9 Letter*").  The parties

subsequently filed another letter each to address the facts and case law surrounding the

admissibility controversy.  Def. Letter, Feb. 13, 2009; Pl. Letter, Feb. 17, 2009.  Following oral

argument on March 11, 2009, the court issued an order admitting the *Declaration* into the record.

The court addresses the reasons supporting its March 16, 2009 order here.

## II. Discussion

Although it appears that the issue before the court is a simple evidentiary question, the

court has struggled to reconcile the controlling case law with the totality of the circumstances

surrounding the submission of the *Declaration*.  After consideration of both, the court has elected

to exercise its discretion and admit the *Declaration* to the record.  To avoid any potential

prejudice to the defendant, however, the court will also allow NYSE to re-depose Hollaar – but

only with regard to the First Supplemental Expert Report of Professor Lee A. Hollaar (Mar. 4,

2005) ("*First Supplemental Report*"), the Second Supplemental Expert Report of Professor Lee

A. Hollaar (Mar. 17, 2005) ("*Second Supplemental Report*"), and the *Declaration* – and to file

supplemental rebuttal expert reports, if it so chooses.

---

[2] In *Outley*, the Second Circuit applied the following factors to determine the
admissibility of evidence: (1) the party's explanation for failure to comply with an order; (2) the
importance of the evidence; (3) the prejudice suffered by the opposing party as a result of having
to prepare to meet the evidence; and (4) the possibility of a continuance.  *See Outley*, 837 F.2d at
590-91.

## A. Applicable Case Law

Although patent cases generally fall under the exclusive jurisdiction of the Federal

Circuit, *see* 28 U.S.C. § 1295(a)(1),[3] the Federal Circuit "'review[s] issues not unique to patent

law according to the law of the regional circuit where appeals from the district court would

normally lie.'" *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1369 (Fed. Cir. 2008) (quoting

*Tronzo v. Biomet*, 236 F.3d 1342, 1346 (Fed. Cir. 2001); *see Midwest Indus., Inc. v. Karavan*

*Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) ("In reviewing district court judgments in

patent cases, we apply our own law with respect to patent law issues, but with respect to

nonpatent issues we generally apply the law of the circuit in which the district court sits.").  As

the admissibility of the *Declaration* is an evidentiary issue, and therefore not unique to patent

law, this court must rely on precedent set by the Second Circuit.

In general, "the trial judge has broad discretion in the matter of the admission or

exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous."

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quotations & citations

omitted); *see Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 193 (2d Cir. 2005)

(Raggi, J., dissenting); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995)

(citations omitted).  Further, the Second Circuit reviews the trial court's exclusion of evidence

---

[3] Specifically, the Federal Circuit shall have exclusive jurisdiction "of an appeal from a
final decision of a district court of the United States . . . , if the jurisdiction of that court was
based, in whole or in part, on section 1338 [(stating that "[t]he district courts shall have original
jurisdiction of any civil action arising under any Act of Congress relating to patents")] . . . ."
§ 1295(a)(1).

pursuant to Fed. R. Civ. P. 37(c) for abuse of discretion.[4]  *See Patterson v. Balsamico*, 440 F.3d

104, 117 (2d Cir. 2006). "In determining whether the district court acted within its discretion,

[the Second Circuit] considers '(1) the party's explanation for the failure to comply with the

[disclosure requirement]; (2) the importance of the testimony of the precluded witness[es];

(3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new

testimony; and (4) the possibility of a continuance.'" *Id.* (quoting *Softel, Inc. v. Dragon Med. &

Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley*, 837 F.2d at

590-91)).[5]

---

[4] Where a party does not make a disclosure, supplement an earlier response, or make an admission in a timely manner, and has thereby failed to meet the requirements of Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

[5] The Southern District of New York has also addressed the exclusion of expert testimony, and has enumerated a similar set of factors that the court should consider:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which the waiver rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willingness in failing to comply with the district court's [scheduling] order.

*Sandata Tech., Inc. v. Infocrossing, Inc.*, Nos. 05 Civ. 09546, 06 Civ. 01896, 2007 WL 4157163, at *8 (S.D.N.Y. Nov. 16, 2007) (citations omitted); *see Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 155-56 (S.D.N.Y. 2003).

## B. Application of the *Outley* Factors

### 1. Papyrus's Explanations

At the heart of its numerous explanations in support of admissibility, Papyrus argues that the court's claim constructions so changed the "rules of the game" that they rendered Hollaar's expert report "incomplete or incorrect" under Rule 26(e), thereby requiring Papyrus to submit an additional supplement to comply with its duty of disclosure. *Pl. Feb. 9 Letter* at 1-2; *see Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 581 F. Supp. 2d 502, 541 (S.D.N.Y. 2008). Specifically, Papyrus claims that neither it nor Hollaar could have anticipated during discovery that the Court would adopt NYSE's construction and define the data structure limitation as "a data structure having the plurality of data packets present in the local computer-readable memory *at the same time*." *See Papyrus Tech. Corp.*, 581 F. Supp. 2d at 541 (emphasis added). NYSE counters that Papyrus is not actually supplementing expert evidence, but rather, is using the *Declaration* as a means to abandon its "memory queues" theory in favor of a completely new "database" theory of infringement that was undisclosed during the initial period of expert discovery.[6] *Def. Jan. 28 Letter* at 1-2.

The court does not agree that its September 2008 claim constructions changed the "rules of the game" in this case. Although Papyrus seeks to support its argument by citing several cases

---

[6] According to NYSE, the "memory queues" theory alleges that "the claimed 'data structure' comprising at least two 'data packets' [can] be found in so-called 'memory queues' in NYSE's system." *Def. Jan. 28 Letter* at 1-2. In contrast, the "database" theory alleges that said plurality of data packets can be found instead in the databases of the local computer-readable memory. *Def. Jan. 28 Letter* at 2.

where the court allowed the parties to amend their contentions after claim construction, these cases are either distinguishable from the controversy at hand or constitute merely persuasive authority. *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1357 (Fed. Cir. 1998) (where the Federal Circuit allowed the admission of new evidence because new prior art, rather than a theory of liability, had become potentially relevant to the defendant's claims as a result of the trial court's claim constructions); *Becton Dickinson & Co. v. Snytron Bioresearch, Inc.*, No. 97-CV-1634, 1998 U.S. Dist. LEXIS 22082, at *46 (S.D. Cal. Dec. 19, 1998) (where the district court's claim construction "potentially render[ed] previously irrelevant arguments very relevant"); *Itron, Inc. v. Benghiat*, No. 99-501, 2001 U.S. Dist. LEXIS 23230, at *4 (D. Minn. Dec. 21, 2001) (where the "timing of [the plaintiff's summary judgment briefing, which occurred prior to any claim construction by the court] resulted in some prejudice to [the defendant] and hampered a more coherent approach to claim construction.").[7]

The alleged lack of notice regarding NYSE's proposed construction and its simultaneous storage requirement also fails to change the rules of the game. Papyrus's own argument, that the *Declaration* is a supplement under Rule 26(e), necessarily implies that it is adding evidence to support a theory of infringement *previously raised during discovery*. A careful examination demonstrates that the record does contain sufficient references to the database and its function to

---

[7] In a similar fashion, NYSE also relies heavily on cases that are distinguishable from the case at hand. *See Convolve, Inc. v. Compaq Computer Corp.*, No. 00 Civ. 5141, 2007 WL 700904, at *1-2 (S.D.N.Y. March 7, 2007) (where the defendant sought to submit both new prior art and amended invalidity contentions); *Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721, 727 (E.D. Va 2001) (noting that the plaintiff filed its supplemental expert report only a week prior to trial).

suggest that Papyrus presented just barely enough material about the database theory during

discovery to support its argument.[8]  As Papyrus presented its theory during discovery – albeit in

---

[8] For example, in the Expert Report of Lee A. Hollaar (Feb. 22, 2005) ("*Expert Report*"), Hollaar refers to both the queues and the database when explaining how the source code for the FIVA hand-held device performs the functions of Claims 1 and 8 of the '002 Patent.  Hollaar writes:

[[



]]

*Expert Report* at 17-18 (emphasis added).  In addition, Hollaar notes that [[


]] *Expert Report* at 18 (emphasis added).  Hollaar also referred to the database's role in the course of his *First Supplemental Report*, stating that

[[



]]

*First Supplemental Report* at 2 (emphasis added).  Further, Hollaar repeatedly echoes these contentions during the course of his deposition, a fact which NYSE readily admits.  *See Def. Jan. 28 Letter* at 2; *id.* Ex. C, *Transcript of Deposition of Lee A. Hollaar* ("*Deposition Tr.*") at 183-84, 186-87, 196-99, 214.  The following exchange is indicative of Hollaar's position:

[[

an inchoate manner – it would be inconsistent for the court to find that Papyrus had no notice of

the simultaneous storage requirement. *See Expert Report* at 17-18; *First Supplemental Report* at

2; *Deposition Tr.* at 183-84, 186-87, 196-99, 214.

Further, even if NYSE did not propose a claim construction that included the

simultaneous storage requirement until after the close of discovery, the record demonstrates that

Papyrus also modified its proposed construction after the close of discovery.  In May 2005, well

before the December 2007 Markman Hearing, Papyrus explained the data structure limitation as

disclosing "a local memory holding one data packet at a time even though a plurality of packets

pass through the preferred data structure."  Pl. Reply Claim Construction Br. at 17.  During the

Markman Hearing, however, Papyrus stated that "accommodating a plurality of data packets is

called for [by the data structure limitation], which the local computer readable memory may store

sequentially *or simultaneously*."  Markman Hr'g Tr. vol. 2 at 47 (emphasis added); *see* Pl.

Markman Hr'g Slide Presentation vol. 2 at 24 (stating that data packets may be stored

"sequentially or *simultaneously*" (emphasis added)).  Papyrus used similar language in its

January 2008 proposed claim construction order, suggesting a definition for the data structure

limitation of "a data structure accommodating a plurality of data packets, which the local

computer-readable memory may store sequentially *or simultaneously*."  Pl. Letter Ex. A at 3, Jan.

---

]]

*Deposition Tr.* at 183-84 (emphases added).  During the course of the deposition, Hollaar
repeatedly, and consistently repeats his explanations of the database's role.  *Id.* at 183-84, 186-
87, 196-99, 214.

14, 2008 (emphasis added).  Therefore, Papyrus's own definitions of the data structure theory

indicate that it was aware the simultaneous storage requirement could become a contentious issue

during litigation.

However, that Papyrus raised the database theory during discovery, and then addressed it

in its oral argument and in its proposed claim construction order raises another issue: whether

Papyrus's inchoate references were sufficient to comply with its duty to fully disclose the theory

during discovery.  The Federal Circuit has held that "discovery is designed to allow the defendant

to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the

defendant's theories of defense, thus confining discovery and trial preparation to information that

is pertinent to the theories of the case."  *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*,

467 F.3d 1355, 1365 (Fed. Cir. 2006) (citations omitted).  Making disjointed references to the

database theory of liability and then supplementing the theory at a later time is generally

inconsistent with the overall goal of discovery.  Here, it appears as though Papyrus is simply

"adding detail" to the database theory, which it had let wither in the earlier stages of litigation in

favor of the seemingly-stronger memory-queues theory.[9]

---

[9] Indeed, during oral argument Papyrus characterized the *Declaration* as providing detail
to the database theory:

> Papyrus: When the Court construed the claims more narrowly, then
> Dr. Hollaar's analysis in his reports did not have enough detail to
> go into the particular data structures in the database that stored the
> order and the execution data packets at the same time.

Similarly problematic are the numerous opportunities which Papyrus had to alert the court of its need to supplement the *Expert Report* and address the database theory. For example, Papyrus could have filed a third supplemental report immediately after the Hollaar deposition or after NYSE filed its principal claim-construction brief. That the previous two supplemental reports were stricken from the record and then later admitted does not preclude careful lawyering, which would suggest that counsel submit the supplement, or make a motion for leave to do so, as a way to create a record for appeal. *See* Hr'g Tr. at 45-46, Apr. 7, 2005 (Dolinger, Mag.) (striking the *First Supplemental Report* and the *Second Supplemental Report*) ("*Dolinger Hr'g Tr.*"); Hr'g Tr. at 7-9, July 17, 2007 (Stein, J.) (admitting the supplemental reports) ("*Stein Hr'g Tr.*"). Papyrus could also have addressed its database theory in either its Reply Brief Concerning Claim-Construction (filed May 20, 2005, a full two weeks after NYSE's principal brief) or in its Supplemental Brief (filed October 31, 2007, after the case was reassigned this court). That Papyrus broadly asked the court for leave to "serve updated expert reports on the liability issues that reflect the Court's claim-construction rulings," thereby providing some notice, does not release it from its duty to adequately alert the court as to the specific issues needing supplementation. *Joint Letter* at 1. Finally, Papyrus could have supplemented the *Declaration* in a more open and transparent manner. Rather than appending the supplement to its own summary

---

> The court: So he had to provide detail in order to make the theory
> fit within the [c]ourt's claim construction?
> Papyrus: That's right, your Honor.

Hr'g Tr. at 22, Mar. 11, 2009.

judgment motion, pursuant to Rule 56(f) it could have shown by "affidavit that, for *specified reasons*, it [could] not present facts essential to justify its opposition" to NYSE's motion, and request that the court "order a continuance to enable affidavits to be taken, depositions to be taken, or other discovery to be undertaken."[10]  Fed. R. Civ. P. 56(f), (f)(2) (emphasis added).

Based on the aforementioned reasons, showing that Papyrus addressed the database theory during discovery, but failed to fulfill its disclosure duties as a result of less than careful lawyering, the court holds that the first *Outley* factor favors neither party.

## 2. Importance of the Evidence

Although there are enough fragments in the *Expert Report*, the *First Supplemental Report*, and the Hollaar deposition to support Papyrus's claim that it put forth the database theory during discovery, it seems unlikely that Papyrus will be able to adequately support its theory without the detailed comparison of the accused system and the '002 patent.  The *Declaration*, therefore, is an extremely important means of supplementing a previously disclosed theory of infringement.  Accordingly, the court holds that the second factor favors Papyrus.

## 3. Prejudice to NYSE

NYSE argues that admission of the *Declaration* would be prejudicial because it would have to depose Hollaar again and submit a new rebuttal report, thereby causing further delays and additional cost.  *Def. Jan. 28 Letter* at 2.  The court, however, finds that little if any prejudice to NYSE would arise from introduction of the *Declaration*.  Because NYSE has had, and continues

---

[10] Notably, the court specifically mentioned the provisions of Rule 56(f) in its October 28, 2008 Order.  *See* Order at 2 n.1.

to have, access to both the working code and the programmers who designed and maintain the accused system, their burden in explaining and defending their system is minimal. In addition, in July 2007, NYSE was granted the opportunity to depose Hollaar about the supplemental reports and to submit a rebuttal expert report. *See Stein Hr'g Tr.* at 7-9. NYSE declined, stating that it preferred to wait until it received some indication from this court regarding case management. *Pl. Feb 9 Letter* Ex. 9-11. Should NYSE wish to depose Hollaar about his two supplemental reports and the *Declaration,* and then submit supplemental rebuttal reports from Dr. Goodman and Dr. O'Hara, it may do so during the summary judgment process. Because any prejudice to NYSE is cured by the additional deposition and supplemental rebuttal reports, the court holds that the third factor favors Papyrus.

### 4. Possibility of a Continuance

As summary judgment briefing has not yet concluded, the court has neither determined whether a triable issue of fact exists in the present controversy, nor has it set the trail date. Even so, the court will carefully limit the time frame for summary judgment, and any time added to the overall summary judgment process will be tightly controlled. Specifically, any additional time granted will (a) allow NYSE to re-depose Hollaar and submit its rebuttal expert reports, and (b) permit the court to appoint a technical expert and allow him to examine the evidence. With regard to NYSE's contention that the introduction of the new evidence will delay summary judgment by raising supplemental claim construction issues, the court does not foresee the need to construe additional claims at this time. Should the need arise, the court will simply construe the terms or phrases (with the help of the technical expert) and issue its decisions when ruling on

the summary judgment motions.  Based on these reasons, the court therefore holds that the fourth

*Outley* factor favors Papyrus.

## C. Other Factors

In addition to the *Outley* factors, the court, has also weighed a number of other

considerations.  *See Boucher*, 73 F.3d at 21 (discussing the trial judge's broad discretion in the

admission or exclusion of expert evidence).  The court is mindful of the protracted nature of this

litigation – which is no fault of counsel or the parties.  The repeated reassignment of the case has

resulted in decisions with differing outcomes (*i.e.*, one striking the supplemental Hollaar reports

and another admitting them), thereby creating no clear expectation among counsel on the

admissibility of supplemental expert evidence.  See *Dolinger Hr'g Tr.* at 45-46; *Stein Hr'g Tr.* at

7-9.  The court is also aware of the inherent difficulty of deciphering thousands of pages of

computer code in TIFF format, even if the format is court sanctioned and legally justified.  NYSE

has had the opportunity to depose Hollaar about the supplemental reports since July 2007, but

declined to do so.  *Stein Hr'g Tr.* at 9; *Pl. Feb 9 Letter* Ex. 9-11.  Further, the record suggests

that NYSE was neither surprised nor should have been surprised by Papyrus's database theory of

infringement.[11]  Def. Mot. for Summ. J. of Non-Infringement at 30; *see Sandata Tech., Inc.*, 2007

---

[11] In its January 15, 2009 Motion for Summary Judgment of Non-Infringement – filed on the same day as the *Declaration* – NYSE put forth an argument against Papyrus's database theory.  Specifically, NYSE claimed that "Papyrus has not submitted evidence sufficient to support a theory of infringement based *on the database* and should be precluded from pursuing such a new theory at this late date. However, *even if NYSE's databases were considered*, it is still clear that the NYSE system does not infringe." Def. Mot. for Summ. J. of Non-Infringement at 30 (emphasis added).  NYSE's own submission, therefore, indicates that it had some notice that Papyrus would be pursuing its database theory.

WL 4157163, at *7-8 (stating in relevant part, that the court should consider the *surprise in fact*

of the party against whom the expert witness would testify (emphasis added)).

Finally, and most importantly, the court has weighed the possible harm that Papyrus – the

client – would incur if the court were to strike the *Declaration*, *i.e.*, preclusion of the opportunity

to present a potentially valid claim of infringement.  If the decision to exclude an expert report

were based simply on compliance with evidentiary rules, then the court would have likely struck

the *Declaration* from the record.  However, exclusion of expert evidence is a drastic measure,

occurring at the discretion of the trial judge.  *See Boucher*, 73 F.3d at 21; *Kyoei Fire & Marine*

*Ins. Co., Ltd. v. M/V Mar. Antalya.*, 248 F.R.D. 126, 159 (S.D.N.Y. 2007) ("The Court is also

mindful that the preclusion of evidence, let alone expert evidence, 'is a drastic remedy and will

apply only in situations where the failure to disclose represents a flagrant bad faith and callous

disregard of the rules.'" (citation omitted)).  Taking into consideration the totality of the

circumstances here, the court finds that exclusion of the *Declaration* would lead to a result where

the client's right to a correct and just decision may have been seriously undermined.  As this case

is still at the summary judgment stage, where the purpose is to determine whether a genuine issue

as to any material fact exists, admitting the *Declaration* will safeguard Papyrus's right to protect

its patent and prevent infringement at this stage of the proceedings.  *See* Fed. R. Civ. P. 56(c)

("The judgment sought should be rendered if . . . there is no genuine issue as to material fact and

[the record shows] that the movant is entitled to judgment as a matter of law.").

### <u>Conclusion</u>

For the foregoing reasons, the court will allow the *Declaration* to be admitted to the record in this case.  Further, the court will allow NYSE the opportunity to (a) depose Hollaar about the *First Supplemental Report*, the *Second Supplemental Report*, and the *Declaration*; and (b) submit supplemental rebuttal reports, on issues arising out of the re-deposition, from its experts Dr. David J. Goodman and Dr. Maureen O'Hara.[12]

Dated April 7, 2009
     New York, NY

Judith M. Barzilay, Judge

---

[12] Although not originally addressed during the hearing with Judge Stein, the court agreed during a March 23, 2009 conference call to also allow a supplemental rebuttal report from NYSE's expert Dr. Maureen O'Hara.